CONCRETE SPECIALTIES, a Wyoming corporation, Plaintiff-Appellee,

v.

H. C. SMITH CONSTRUCTION CO., a California corporation, Defendant-Appellant,

and

the Boeing Company, a Delaware corporation, Defendant.

No. 180–69.

United States Court of Appeals, Tenth Circuit.

March 23, 1970.

Rehearing Denied April 27, 1970.

---

Charles E. Graves, Cheyenne, Wyo., and William E. Shade, Greeley, Colo., for defendant-appellant.

Vincent A. Ross, Cheyenne, Wyo., for plaintiff-appellee.

Before MURRAH, Chief Judge, and HILL and HICKEY, Circuit Judges.

MURRAH, Chief Judge.

H. C. Smith Construction Co. appeals from judgment on a jury verdict in favor of Concrete Specialties in a suit against Smith and The Boeing Co.,[1] alleging that they "willfully and wrongfully prevented" Concrete from performing its contract with Smith for supplying concrete in the construction of Wyoming missile sites. Concrete sought to recover the monies spent in preparing for performance of the contract and also the profits which it would have realized by performance. Smith's answer denied that it had wrongfully prevented Concrete's performance and as a defense asserted that it had invoked the contract's cancellation clause because Concrete failed to provide acceptable concrete. Smith also counterclaimed for the cost of removing and replacing Concrete's unsatisfactory work and for amounts paid on behalf of Concrete to settle claims under the Miller Act and its payment bond.

After framing the issues on the pleadings, the court properly told the

---

1. Concrete has not appealed from the jury's verdict absolving Boeing and no question is raised on appeal as to its liability.

jury that Concrete had the burden of proving Smith's illegal termination or other breach of the contract and of proving its damages from the breach. The jury was told that each of the parties to the contract owes the other a duty of good faith performance and that one party is excused from performance by the unwarranted interference of the other and could recover damages for the resulting breach.[2] They were accordingly told, in effect, that if they found that Smith unduly interfered with Concrete's performance of the contract the cancellation was legally unjustified and Concrete could recover its damages.

■ Apparently without intending to derogate from the foregoing instructions, the court also instructed that a party to a contract cannot commit a breach by exercising a contract right and that if they found Concrete failed to substantially perform the contract Smith's cancellation was justified. Obviously this could be so only if Smith did not interfere with Concrete's performance; Smith could not interfere with the performance of the work and at the same time legally terminate the contract for nonperformance. Ace Construction Co. v. W. H. Nichols & Co., 353 F.2d 110 (10th Cir. 1965); Gulf Oil Corp. v. American Louisiana Pipe Line Co., 282 F.2d 401 (6th Cir. 1960). See Gibson v. J. T. Allen Agency, 407 P.2d 708 (Wyo. 1965); 6 A. Corbin, Contracts § 1266, at 63 (1962). Interference was, indeed, the primary issue submitted to the jury, albeit the ultimate question submitted was whether Smith had illegally terminated the contract. Once that issue is resolved in favor of Concrete the right to damages is established.

■ On argument Concrete no longer claimed that it had substantially performed the contract; instead it chose to rest its case squarely on the question of interference. This brings us to the sufficiency of the evidence to sustain a finding of Smith's interference and consequent liability. Concrete presented evidence from which the jury could well conclude, as it apparently did, that Smith had breached its duty of cooperation in the rendition of Concrete's performance by failing to have the sites ready for pouring after calling Concrete's trucks there, by failing to vibrate the concrete properly once it had been poured, and by failing to give Concrete a larger part in the design and control of its concrete mix formula.

■ Smith also contends that Concrete's evidence of damages was conflicting and confusing and legally insufficient as a basis for the recovery of any damages. The jury was told that if they found from a preponderance of the evidence that Concrete was entitled to recover, it was entitled to be compensated for all losses to its business, including lost profits, proximately caused by Smith's interference with and termination of the contract. The jury was properly instructed that certainty as to the amount of damages was not required once the existence of damages was established with the requisite certainty. A to Z Rental, Inc. v. Wilson, 413 F.2d 899, 908 (10th Cir. 1969); Garcia v. Mountain States Telephone and Telegraph Co., 315 F.2d 166, 167–168 (10th Cir. 1963); T. F. Scholes, Inc. v. United States ex rel. H. W. Moore Equip. Co., 295 F.2d 366, 369–370 (10th Cir. 1961). We think that there was record lay and expert testimony to support not only the theory of recovery but the amount of damages as well.

2. Indeed, as Williston has stated, "[t]he underlying principle is that there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; in other words, in every contract there exists an implied covenant of good faith and fair dealing." 5 S. Williston, Contracts § 670, at 159 (3d ed. 1961). See Ryder Truck Rental, Inc. v. Central Packing Co., 341 F.2d 321, 323 (10th Cir. 1965); Ace Construction Co. v. W. H. Nichols & Co., 353 F.2d 110 (10th Cir. 1965); C. H. Codding & Sons v. Armour and Co., 404 F.2d 1, 8 (10th Cir. 1968).

Smith finally complains of cumulative error in the admission of evidence at trial and allegedly erroneous references to the amount of Smith's counterclaim in the court's unchallenged instructions. Suffice it to say that in our view the trial court's conduct of the trial was entirely free of reversible error. The judgment is accordingly affirmed.